IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICAH JORDAN MIMS, <br><br> Defendant. | Case No. 25-CR-00243-SEH |

## OPINION AND ORDER

Before the Court is Defendant Micah Mims's motion to suppress evidence. [ECF No. 20]. The Court reviewed the briefing of the parties and heard argument on the motion at the pretrial hearing on December 16, 2025. For the reasons set forth below, the motion is denied.

**I. Background/Procedural History**

In July 2020, Mims was charged with felony theft of less than $25,000 in Johnson County, Kansas. [ECF No. 20-6 at 3]. He pleaded guilty to the offense and was ultimately sentenced to nine months of incarceration and twelve months of probation. [*Id.* at 5]. On June 3, 2022, he appeared in person and stipulated to violating his probation. [*Id.* at 6].

Meanwhile, in February 2021, Mims was charged with a single felony count of larceny of merchandise from a retailer in Tulsa County District

Court. [ECF No. 20-4]. He pleaded guilty to a misdemeanor count of the same charge and received a six-month suspended sentence. [*Id*. at 6]. When Mims failed to appear in April 2022 on an application to revoke his suspended sentence, a bench warrant issued. [*Id*. at 7–8].

Mims may have failed to appear in Tulsa because he was then enmeshed in yet another criminal matter in Johnson County, Kansas. *Compare* [ECF No. 20-4] *with* [ECF No. 20-5]. On March 22, 2022, prosecutors in Kansas charged Mims with violating a protective order. [ECF No. 20-5 at 1–2]. He pleaded guilty to that offense in early June 2022 and was sentenced to 180 days in jail with 12 months of probation. [*Id*. at 2]. The Court infers that Mims was released from custody when he entered his probationary term on June 9, 2022. [*Id*.] By July of the following year, Mims had warrants out for his arrest on all three cases in both states.[1] [*See* ECF No. 20-4 at 8] (bench warrant issuing on April 13, 2022 and Mims appearing in custody on July 20, 2023).

---

[1] For the sake of clarity, the relevant prior offenses in date order are as follows: (1) Felony Theft Less Than $25,000, 20-CR-1624, Johnson County, Kansas; (2) Misdemeanor Larceny of Merchandise from Retailer, CF-2021-513, Tulsa County, Oklahoma; (3) Misdemeanor Violation of Protective Order, 22-CR-799, Johnson County, Kansas. It is not clear when warrants were issued in the Kansas cases, but the defendant concedes in his motion that "Mr. Mims did have an open bench warrant in Tulsa County for a failure to appear on his application to revoke … and bench warrants in his Kansas cases, but facing a warrant for one felony is significantly different than being wanted for multiple felony offenses in multiple states." [ECF No. 20 at 5-6].

Mims's fugitive status led Officer William Shanks of the Tulsa Police Department to search for Mims. Shanks believed Mims was operating a Facebook account under the vanity name "Pappa Chasa." [ECF No. 20-1 at 2]. On June 22, 2023, Shanks submitted an affidavit for a search warrant to Tulsa County Special Judge Rodney Sparkman, seeking information about the "Pappa Chasa" account from the Facebook parent company Meta Platforms, Inc. [*Id.* at 1–3]. In the affidavit, Shanks stated that that Mims was a fugitive from justice with outstanding warrants in the three cases mentioned above. [*Id.* at 2]. He further asserted that "there is a strong public interest in locating and arresting Micah Mims, as he is wanted for multiple felony offenses in multiple states." [*Id.*]. The warrant stated, "that there is probable cause to believe that Micah Mims has committed the offense of Larceny of Merchandise From Retailer, Felony Theft, and Violation of Protection Order and that he possesses the ability to use and exercise control over … the subject [Facebook] account." [*Id.* at 4] (citation modified).

A few weeks later, Shanks requested another warrant. This time, he sought cell phone records from AT&T. [ECF No. 20-2]. He pursued evidence that Mims had committed the offense of possessing a firearm after former conviction of a felony. [*Id.* at 1]. Shanks's probable cause affidavit outlined three sources: a records check indicating that Mims was previously convicted of multiple felonies, a 911 call, and Facebook data obtained through the

previous search warrant. [*Id*. at 1–3]. Shanks stated that he identified a phone number for Mims from the Facebook data he had previously received, and that the information from Mims's phone would help law enforcement locate other evidence and suspects. [*Id*. at 3]. The second warrant issued July 12, 2023. [*Id*. at 6].

Five days later, Shanks sought a third and final search warrant. This time, Shanks wanted to search Mims's home for evidence that Mims had committed the offense of possession of firearm after former conviction of felony. [ECF No. 20-3]. Shanks's affidavit relied on much of the information recited in previous warrants, including information from the recently obtained cell phone warrant. [*Id*.]. The warrant issued, and Mims was arrested during its execution on July 20, 2023. [*Id*. at 9].

On July 8, 2025, a federal grand jury charged Mims with being a felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). [ECF No. 2]. Mims now moves to suppress "all evidence … because it could not have been obtained without the evidence obtained by the Facebook warrant which must be suppressed." [ECF No. 20 at 7].

## II. Discussion

The Court denies Mims's request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). [ECF No. 20 at 1]. To be entitled to an evidentiary

hearing under *Franks*, Mims must "make[] a 'substantial preliminary showing' that a violation has occurred." *United States v. McKinney*, No. 21-5074, 2023 WL 111044, at *2 (10th Cir. Jan. 5, 2023) (quoting *United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020)). A Fourth Amendment "*Franks* violation occurs if '(1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued.'" *Id.* (quoting *United States v. Herrara*, 782 F.3d 571, 573 (10th Cir. 2015)). Recklessness and materiality must be proven to be entitled to relief. *Id.* (citing *Moses*, 965 F.3d at 1110). "To make the requisite showing of recklessness, a defendant must furnish evidence 'that the officer in fact entertained serious doubts as to the truth of his allegations.' … In other words, a defendant must show that the officer acted with 'deliberate falsehood or [ ] reckless disregard for the truth.'" *Id.* (citation omitted).

Exclusion is a remedy reserved for deliberate misstatement and those of reckless disregard; it is not an appropriate remedy when "police have been merely negligent in checking or recording the facts relevant to a probable-cause determination." *Franks*, 438 U.S. at 170. "When material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171–72.

Here, Mims focuses on two specific statements in the Facebook affidavit that he alleges are misleading. First, Shanks stated in his affidavit that the "Pappa Chasa" Facebook account "[c]onstitutes evidence that … the person in possession [of the Facebook account] participated in the commission of … Larceny of Merchandise From Retailer, Felony Theft, and Violation of Protection Order" and sought information from January 1, 2023, through "the date the warrant application was submitted, June 22, 2023. [ECF No. 20-1 at 1, 3]. Relatedly, Shanks further stated that "the sixth amendment of the United States Constitution guarantees Micah Mims a right to a speedy trial" and that not pursing "all reasonably accessible avenues of investigation to locate" Mims could violate his rights. [ECF No. 20-1 at 2].

Mims argues that because he had already pleaded guilty to the three offenses listed in the affidavit before January 1, 2023, he could not have been under investigation for those crimes at that time. [ECF No. 20 at 5]. Without this context, he argues, the affidavit would have been misleading to the issuing judge. [*Id*.].

Second, Mims argues that the affidavit falsely alleges that he was "wanted for multiple felony offenses in multiple states." [*Id*. at 6]. His felony case in Oklahoma was reduced to a misdemeanor due to his guilty plea. [*Id*. at 5]. Although he had warrants in three cases in two states, only one of those

6

three cases involved a felony. Mims argues that this misrepresentation "exaggerates the nature of Mr. Mims' fugitive status." [*Id.*].

According to Mims, these misstatements are material to a finding of probable cause, and there is no longer any basis for the search warrant when the misstatements are removed from the affidavit. [*Id.* at 6]. Using defendant's logic, if there is no basis for the Facebook search warrant, any evidence obtained from the warrant must be suppressed along with all other evidence that relies upon the information obtained from that warrant. [*Id.* at 7]. This would require suppression of all evidence obtained from each of the three search warrants described above. [*Id.*].

The Fourth Amendment provides that "no [w]arrant[] shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. If a search violates the Fourth Amendment, the exclusionary rule typically requires that the evidence obtained from the search be suppressed. *Nix v. Williams*, 467 U.S. 431, 440–42 (1984).

"An affidavit supports probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Moses*, 965 F.3d 1106, 1113 (10th Cir. 2020) (citation and internal quotation

7

marks omitted). "A 'fair probability,' is not an airtight guarantee; nor is it 'proof that something is more likely true than false.'" *United States v. Jenkins*, 819 F. App'x 651, 658 (10th Cir. 2020) (quoting *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014)). "'Rather, a 'fair probability,' if placed on a hierarchy, ranks somewhere between a naked suspicion and a preponderance of the evidence.'" *Id.* (citing *Denson*, 775 F.3d at 1217).

Probable cause "require[s] a nexus between suspected criminal activity and the place to be searched." *United States v. Biglow*, 562 F.3d 1272, 1278 (10th Cir. 2009) (citation omitted). In determining whether a nexus exists, the Court may consider "(1) the type of crime at issue, (2) the extent of a suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence." *Id.* at 1279. A sufficient nexus exists where "an affidavit describes circumstances which would warrant a person of reasonable caution" to believe "that the articles sought are at a particular place." *Id.* (citations and internal quotation marks omitted).

The task of the issuing judge is to make a practical, common-sense decision about "whether the facts and circumstances within the officer's knowledge based on reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has [been] or is being committed." *United States v. Armendariz*, 922 F.2d 602, 607–08

(10th Cir. 1990). "An affidavit containing erroneous or unconstitutionally obtained information invalidates a warrant if that information was critical to establishing probable cause. If, however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid." *United States v. Sims*, 428 F.3d 945, 954 (10th Cir. 2005) (citations and internal quotation marks omitted).

    Here, the problem with Mims's argument is that if the elements of the Facebook warrant to which he objects are stricken, the warrant is still supported by sufficient probable cause and a sufficient nexus. In other words, even if Shanks's statements were reckless misstatements (which the Court finds they were not), they were not material. The affidavit correctly identifies Mims as a fugitive from justice who has outstanding warrants in Tulsa County case CF-2021-513 and Johnson County, Kansas cases 22-CR-1799 and 20-CR-1627. [ECF No. 20-1 at 2]. Shanks specifically stated that the purpose of the warrant was to obtain information to assist in "locating and arresting Micah Mims," and characterized his investigation as a "fugitive investigation". [*Id.*]. The affidavit further described how Shanks used photographs from TRACIS and the Oklahoma Department of Corrections website to identify Mims in photographs from the "Pappa Chasa" Facebook account. [*Id.*]. In short, the information in the affidavit, even without the information highlighted as "misleading" by Mims, establishes the minimal

9

sufficient nexus between the "Pappa Chasa" Facebook account and Mims's status as a fugitive.

Regardless, under the good faith exception to the exclusionary rule, suppression of evidence is not the appropriate remedy when "the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." *United States v. Campbell*, 603 F.3d 1218, 1225 (10th Cir. 2010) (citation omitted). Courts presume an officer acted in good faith when a search is conducted pursuant to a warrant, but that presumption (and the good-faith exception to the exclusionary rule) does not apply:

> (1) when the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth;
> (2) when the issuing magistrate wholly abandon[s her] judicial role;
> (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
> (4) when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

*United States v. Augustine*, 742 F.3d 1258, 1262 (10th Cir. 2014) (citations and internal quotation marks omitted).

None of these four circumstances are present, so the Court finds that the good faith exception applies. And for the reasons explained above, Mims has

not made a substantial preliminary showing that a Fourth Amendment violation has occurred.

### III. Conclusion

It is therefore ORDERED that the Defendant's motion to suppress [ECF No. 20] is DENIED.

DATED this 15th day of January, 2026.

_____
Sara E. Hill
UNITED STATES DISTRICT JUDGE